UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>– against –<br><br>Falgun Dharia | **MEMORANDUM AND ORDER**<br><br>14-CR-390<br>15-CR-367 |

**Jack B. Weinstein, Senior United States District Judge**

| **Parties and Proposed Interveners** | **Appearances** |
|---|---|
| Falgun Dharia | **Robert S. Wolf**<br>**Robert Barnes McFarlane**<br>Moses & Singer<br>405 Lexington Avenue<br>New York, NY 10174<br>212-554-7800<br>Fax: 212-554-7700<br>Email: rwolf@mosessinger.com |
| United States of America | **Jacquelyn M. Kasulis**<br>United States Attorneys Office<br>271 Cadman Plaza East<br>Brooklyn, NY 11201<br>718-254-6103<br>Fax: 718-254-6076<br>Email: jacquelyn.kasulis@usdoj.gov |
| PRP Neptune Beach LLC<br>PRP Brooklyn Eatery LLC | **Soma Sultana Syed**<br>Soma Syed & Associates<br>118-21 Queens Boulevard<br>Suite 606<br>Forest Hills, NY 11375<br>718-261-2003<br>Fax: 347-923-3210<br>Email: soma.syedesq@gmail.com |

Shailendra Bliawnani
Vision One Hospitality, LLC

**Lauren Mary Paxton**
OlenderFeldman LLP
422 Morris Avenue
Summit, NJ 07901
908-964-2485
Fax: 908-810-6631
Email: lpaxton@olenderfeldman.com

**Contents**

I. Introduction ................................................................................................................ 2
II. Facts ........................................................................................................................... 3
   A. Background ........................................................................................................ 3
   B. Relevant Portion of Information ........................................................................ 5
III. Law ............................................................................................................................ 7
   A. Statutory Framework ......................................................................................... 7
   B. Burden on Sentencing and Complexity ............................................................. 9
   C. Double Recovery .............................................................................................. 11
   D. Remission or Mitigation .................................................................................. 12
IV. Application of Law to the Facts ............................................................................... 14
   A. Victims Under the MVRA ............................................................................... 14
   B. Complexity and Burden ................................................................................... 17
   C. Prudential Considerations ................................................................................ 19
V. Conclusion ............................................................................................................... 20

### I. Introduction

Providing restitution to victims of crimes is one of the goals of the criminal justice system. *See, e.g.*, 18 U.S.C. § 3663A (providing restitution to victims). But, where restitutionary interests frustrate important sentencing principles or due process, restitution must give way. *See, e.g.*, American Law Institute, Model Penal Code: Sentencing (Proposed Final Draft), App. B at 613 (2017) ("When core interests of public safety and recidivism reduction do not conflict with an award of victim restitution . . . .").

2

Congress passed the Mandatory Victim Restitution Act of 1996 to provide relief to victims "directly and proximately harmed" by a defendant's conduct, not to all persons affected by a defendant's conduct. *See id.* § 3663A(a)(2).

The court was about to sentence the defendant based on a plea agreement (providing for extensive restitution) when individuals and entities sought intervention claiming to be additional victims of the defendant's crimes. After discovery, they did not show entitlement to restitution. Their claims for restitution are dismissed. The court will sentence the defendant and provide restitution only as agreed to by the defendant and the government in the defendant's cooperation agreement.

Additional claims by the proposed interveners for remuneration may be decided under the Remission or Mitigation procedure, allowing the government to share with other claimants, in its discretion, funds it received in forfeiture from the defendant. *See infra* Part III(D).

## II. Facts

### A. Background

On October 12, 2017 Defendant Dharia was about to be sentenced by the court. *See* Oct. 12, 2017 Hr'g Tr. Several individuals, and attorneys representing entities appeared, claiming restitution as victims. *Id.*

The case was referred to the magistrate judge for discovery. An evidentiary hearing was set for December 19, 2017. *See* Oct. 13, 2017 Order, ECF No. 46. During the course of discovery, several of the individuals who had attended the sentencing hearing withdrew their claims. Letter of Peter Hurwitz, ECF No. 49, Nov. 7, 2017. This left PRP Brooklyn Eatery, LLC and PRP Neptune Beach, LLC (together, the "PRP Entities"), as new restitution claimants.

3

On November 27, 2017, Shailendra Bhawnani and Vision One Hospitality sought to intervene as restitution claimants. *See* Nov. 27, 2017 Order, ECF Nos. 57-58.

Discovery, supervised by the magistrate judge, was contentious. Many factual issues were disputed. After a protective order was signed by Kesav Dama, as "Guardian" of Venkaiah Dama, for the PRP Entities, the defendant challenged the authority of Kesav Dama to act on behalf of the PRP Entities. Letter of Robert Wolf, ECF No. 56, Nov. 22, 2017; Letter of Robert Wolf, ECF No. 59, Nov. 29, 2017.

Two of the three counts that require the defendant to pay restitution are based upon the bank fraud statute, 18 U.S.C. § 1344. The other count requiring restitution is for a false statement in a tax return, 26 U.S.C. § 7206.

The conduct to which the defendant pled guilty involved two schemes related to the Small Business Administration (SBA) and bank loans. *See* Information, ECF No. 2, Aug. 14, 2014. In the first scheme, the defendant submitted SBA guaranteed loan applications to PNC Bank for financing in connection with Houlihan's restaurant franchises. *Id.* ¶ 7. The defendant hid and distorted his ownership interest in specified companies, allowing him to gain access to loans for which he was not eligible. *Id.* ¶ 8. Once he obtained these loans from PNC Bank, he misused them for projects and investments not contemplated by the banks and the SBA. *Id.* ¶ 10. He defaulted on the loans. *Id.*

The second scheme involved Fidelity Bank of Florida and hotel financing. *Id.* ¶ 12. The defendant submitted loan applications to the bank in which he made misrepresentations. *Id.* ¶¶ 13-14. The loans were made. The defendant defaulted. *Id.*

The defendant has agreed to pay restitution to both PNC Bank and Fidelity Bank of Florida. Cooperation Agreement at 1-2. The government has submitted loss calculations for the

4

banks. *Id.*; *see also* Oct. 12, 2017 Hr'g Tr. The total amount of restitution to these two banks agreed to in the cooperation agreement is over $11 million. *Id.*

Shailendra Bhawnani and Vision One Hospitality base their claim on the assertion that Mr. Bhawnani was an investor in one of the hotels that was part of the fraudulent scheme. *See* Letter of Lauren Paxton at 2, ECF No. 70, Dec. 8, 2017. They also claim that the defendant made a false statement to procure their investment in the hotel. *Id.* They already have prevailed on their claim in arbitration and have an unpaid judgement for approximately $1.2 million against the defendant. *See* Nov. 27, 2017 Order, ECF Nos. 57-58, Ex. A.

The PRP Entities claim that they are entitled to restitution because they provided funds that the defendant used for a down payment on a defaulted bank loan. *See* Oct. 12, 2017 Hr'g Tr. 10:23-11:4.

### B. Relevant Portion of Information

Relevant portions of the Criminal Information are set out below. They demonstrate that the crimes charged were based on bank fraud with restitution claimed by, and provided for in the cooperation agreement, the banks defrauded.

II. Bank Fraud Schemes

A. PNC Bank

6. In approximately 2003, the defendant FALGUN DHARIA, together with others, obtained the development rights to various Houlihan's Restaurants, Inc. ("Houlihan's") franchises.

7. To obtain funding to develop three of the Houlihan's franchises, including a Houlihan's restaurant in Brooklyn, New York, the defendant FALGUN DHARIA, together with others, submitted applications to PNC Bank for loans, which were partially guaranteed by the SBA.

8. The SBA partnered with approved lending institutions to provide loans with favorable terms to borrowers for starting, acquiring and expanding small

5

businesses. The SBA had personal financial disclosure and guarantee requirements to obtain an SBA-guaranteed loan. For example, at the time that the defendant FALGUN DHARIA, together with others, submitted the loan applications to PNC Bank, the SBA limited a borrower to $2 million in total SBA-guaranteed loans. The SBA also required personal financial statements and guarantees from individuals applying for a loan who had a 20% or more ownership interest in the small business.

9. In or about and between January 2003 and December 2009, the defendant FALGUN DHARIA, together with others, made material misrepresentations in the loan applications submitted to PNC Bank regarding the ownership structure of the three Houlihan's franchises. Specifically, in order to circumvent the SBA's lending requirements, in documentation submitted to the bank, DHARIA minimized his ownership interest in each of the three Houlihan's restaurants and inflated the ownership interests of the other investors. In reality, DHARIA's ownership interest in each of the three Houlihan's restaurants was greater than 20%, thus requiring him to provide personal financial statements and guarantees to the bank for each loan. DHARIA did not comply with these requirements.

10. Once he and his business partners unlawfully obtained the loans from PNC Bank, contrary to the terms of the loans, the defendant FALGUN DHARIA used portions of those loans for other projects and investments. DHARIA did not report his improper use of portions of those loans to PNC Bank or the SBA.

11. The defendant FALGUN DHARIA and his business partners eventually defaulted on the loans obtained from PNC Bank, resulting in millions of dollars of loss to PNC Bank and the SBA.

B. Fidelity Bank of Florida

12. Beginning in approximately January 2006, the defendant FALGUN DHARIA, together with others, purchased approximately five hotels throughout the United States in need of renovation.

13. To obtain financing for these hotels, the defendant FALGUN DHARIA, together with others, submitted applications for approximately five loans to Fidelity Bank of Florida.

14. Each of the five loan applications contained material misrepresentations about the ownership structure of the hotels. Specifically, the defendant FALGUN DHARIA minimized his ownership interest in the hotels and inflated the ownership interests of the other investors to avoid having to provide personal guarantees for the loans.

6

15. In or about and between January 2006 and December 2010, the defendant FALGUN DHARIA, together with others, obtained five loans from the Fidelity Bank of Florida. DHARIA and his business partners defaulted on those loans, resulting in millions of dollars of loss to Fidelity Bank of Florida.

## III. Law

### A. Statutory Framework

Criminal restitution as part of a sentence is a relatively new and unsettled aspect of sentencing procedure. The Mandatory Victim Restitution Act (MVRA) of 1996 provides:

> Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the *court shall order*, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, *that the defendant make restitution to the victim of the offense* or, if the victim is deceased, to the victim's estate.

18 U.S.C. § 3663A(a)(1) (emphasis added).

A "victim" is defined as:

> a person *directly and proximately harmed as a result of the commission of an offense* for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct *in the course of the scheme, conspiracy, or pattern*. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.

*Id.* § 3663A(a)(2) (emphasis added). If agreed to in a plea agreement, the court may also order restitution to be paid to "persons other than the victim of the offense."

The legislative history of the MVRA demonstrates that it is not intended to remedy all harms caused by a defendant's conduct.

> It is the committee's intent that courts order full restitution to all identifiable victims of covered offenses, while *guaranteeing that the sentencing phase of criminal trials do not become fora for the determination of facts and issues better suited to civil proceedings*.

7

To that end, *the committee amendment restricts mandatory restitution requirements* to criminal cases involving either a crime of violence, as defined in section 16 of title 18, United States Code; a felony against property under title 18, including any felony under title 18 committed by fraud or deceit; a crime involving tampering with consumer products under section 1365 of title 18, and offenses under part D of the Controlled Substances Act (21 U.S.C. 841 et seq.).

Moreover, the committee amendment requires that there be an identifiable victim who suffers a physical injury or pecuniary loss before mandatory restitution provisions would apply. The committee intends this provision to mean, except where a conviction is obtained by a plea bargain, that mandatory restitution provisions apply *only in those instances where a named, identifiable victim suffers a physical injury or pecuniary loss directly and proximately caused by the course of conduct under the count or counts for which the offender is convicted.*

In the case of a conviction obtained by a plea bargain, it is the committee's intent that, in addition to any restitution mandatory for the offense for which the victim is convicted, all other restitution included in the plea agreement and supported by fact be ordered by the court. The committee recognizes the central role played by plea bargaining in the Federal criminal justice system. Nothing in this act is intended by the committee to impair the fundamental and critical function served by plea bargaining in the administration of justice, or the traditional authority of the court to accept a plea.

S. Rep. No. 104-179, at 18-19 (1995), *as reprinted in* 1996 U.S.C.C.A.N. 924, 931-32 (emphasis added).

In addition to the mandatory restitution statute, 18 U.S.C. § 3771 gives victims of crimes the right to "full and timely restitution as provided in law," and the right to "be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a)(4)-(6).

Whether a person or entity is a victim depends on "whether [] losses were caused by [the] offense of conviction." *United States v. Archer*, 671 F.3d 149, 170 (2d Cir. 2011). The court may not order "restitution for losses caused by an unprosecuted offense rather than by the offense of conviction." *Id.* "[V]ictims, therefore, is in large part about whether their losses were caused by [the] offense." *Id.*

"For a number of years, [the Court of Appeals for the Second Circuit] determined whether a loss was part of the offense of conviction by reference to the elements of the crime: restitution was proper only if the conduct that caused the loss was an element of the crime." *Id.* This test has been widened. In *Archer*, the appellate court allowed clients who made payments to a corrupt immigration lawyer convicted of visa fraud to collect restitution, even though the conduct was not an element of the offense. The payments were an "integral part of the single scheme [the defendant] devised" because the payments were "the mechanism through which [the defendant] profited from his conspiracy." *Id.* at 172.

### B. Burden on Sentencing and Complexity

The proposed final draft of the Model Penal Code on sentencing offers useful commentary on victim restitution and how it interacts with the other aims of criminal sentencing.

> In contrast with many other asserted victims' interests, an interest in restitution does not suffer from a high degree of indeterminacy. While the scope of losses that should be compensable in criminal proceedings may be debated, the outcome sought is not an abstraction. Partly for this reason, and partly due to broad consensus among American criminal justice systems, the Reporters recommend in this draft that "victim restitution" be added to the general purposes of the sentencing system as expressed in § 1.02(2). In addition, cogent arguments exist that victim restitution orders can sometimes further other substantive goals of the system, such as offender rehabilitation and reintegration.
>
> On the other hand, victim Restitution, like all economic sanctions, can impair offenders' efforts to "get back on their feet" in the legitimate economy and law-abiding society. Victims' restitutionary interests may thus conflict with offender reintegration and public-safety goals. Section 6.04A must navigate this conflict. Following debate, and in accordance with the vote of the membership at the Institute's 2014 Annual Meeting, §6.04A has been drafted to prohibit restitution awards when they would prevent offenders from being able to meet their own reasonable financial needs and those of dependents. See §6.04A (6). When core interests of public safety and recidivism reduction do not conflict with an award of victim restitution, the Code places priority on restitution over all other economic sanctions that a criminal court may impose.

American Law Institute, Model Penal Code: Sentencing (Proposed Final Draft), App. B at 613 (2017).

The ALI cautions accord with the federal statute. It provides that the mandatory restitution scheme does not apply where:

> determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

18 U.S.C.A. § 3663A (c)(3)(B); *see also Hsu v. United States*, 954 F. Supp. 2d 215, 222 (S.D.N.Y. 2013) ("The Court declined to order restitution in Hsu's case because it agreed with the Government's argument that identifying Hsu's victims and their loss amounts would be a lengthy and fact-intensive determination that would delay and burden the sentencing process.").

Legislative history is instructive:

> In all cases, it is the committee's intent that highly complex issues related to the cause or amount of a victim's loss not be resolved under the provisions of mandatory restitution. The committee believes that losses in which the amount of the victim's losses are speculative, or in which *the victim's loss is not clearly causally linked to the offense*, should not be subject to mandatory restitution.
>
> Other than offenses under part D of the Controlled Substances Act (21 U.S.C. 841 et seq.), the committee specifically rejects expanding the scope of offenses for which restitution is available beyond those for which it is available under current law. Regulatory or other statutes governing criminal conduct for which restitution is not presently available historically contain their own methods of providing restitution to victims and of establishing systems of sanctions and reparations that the committee believes should be left unaffected by this act.

S. Rep. No. 104-179, at 18-19 (1995), *as reprinted in* 1996 U.S.C.C.A.N. 924, 931-32 (emphasis added).

As noted in a district court opinion:

> The complexity of issues has not discouraged district courts from ordering restitution in criminal cases-as required by Congress. For instance, in *United States v. Cienfuegos*, the Court of Appeals for the Ninth Circuit found that "the district

10

court abused its discretion by relying on the perceived complexity of the restitution determination and the availability of a more suitable forum to decline to order restitution for future lost income." 462 F.3d 1160, 1168 (9th Cir.2006). The court further noted that "[t]he MVRA contemplates that some calculations may be complex," and, accordingly, authorizes the district court to "require additional documentation or hear testimony," or to "refer any issue arising in connection with a proposed order of restitution to a magistrate judge or a special master for proposed findings of fact." *Id.* (quotations marks and citations omitted).

*United States v. Brennan*, 526 F. Supp. 2d 378, 384–85 (E.D.N.Y. 2007).

The statutory restitution scheme provides the court with mechanisms to ameliorate some of the practical issues that may be raised in a complex case. For example, the court can "order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a). It may also "refer any issue arising in connection with a proposed order of restitution to a magistrate judge or special master for proposed findings of fact and recommendations as to disposition, subject to a de novo determination of the issue by the court." *Id.* § 3664(d)(6).

### C. Double Recovery

The text and structure of the MVRA provides some confusion about the proper scope of a restitution order when a victim has already been compensated from another source: "*In no case shall the fact that a victim has received* or is entitled to receive *compensation* with respect to a loss from insurance or any other source *be considered in determining the amount of restitution.*" 18 U.S.C. § 3664(f)(1)(B) (emphasis added). But the statute also states, in seemingly contrary language:

> (1) If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

11

> (2) *Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages* for the same loss by the victim in
> (A) any Federal civil proceeding; and
> (B) any State civil proceeding, to the extent provided by the law of the State.

*Id.* § 3664(j) (emphasis added).

The Court of Appeals for the Second Circuit has held that a restitution order may be offset only by funds that are actually received by a victim. *United States v. McGinn*, 787 F.3d 116, 131 (2d Cir. 2015) ("[T]he government moved the district court to clarify its restitution orders, arguing that they could be understood to provide that the restitution could be offset by the amount of money *collected* by the court-appointed Receiver in the separate SEC action, rather than the amount that the Receiver actually *distributes* to these victims. This reading would violate the MVRA, which only permits offset for money 'recovered' as opposed to 'collected' but not necessarily distributed."); *see also United States v. Drayer*, 364 F. App'x 716, 722 (2d Cir. 2010) ("Here, the government concedes that remand is necessary in order for the District Court to clarify whether Drayer is entitled to a further reduction in the restitution ordered because of any amounts the 20 additional victim-banks received from the BONY settlement. Accordingly, we vacate the judgment with respect to Drayer's restitution order and remand solely for findings in that respect."). The case law can be restated in a simple principle: "restitution may not result in double recovery." *United States v. Cummings*, 189 F. Supp. 2d 67, 79 (S.D.N.Y. 2002).

### D. Remission or Mitigation

The Attorney General of the United States is authorized to:

> grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the

rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section.

21 U.S.C. § 853(i).

The regulations governing the remission process, are codified in 28 C.F.R. §§ 9.2, 9.4 and 9.8. "Victim" is defined as:

> a person who has incurred a pecuniary loss as a direct result of the commission of the offense underlying a forfeiture . . . . A victim does not include one who acquires a right to sue the perpetrator of the criminal offense for any loss by assignment, subrogation, inheritance, or otherwise from the actual victim, unless that person has acquired an actual ownership interest in the forfeited property; provided however, that if a victim has received compensation from insurance or any other source with respect to a pecuniary loss, remission may be granted to the third party who provided the compensation, up to the amount of the victim's pecuniary loss as defined in § 9.8(c).

28 C.F.R. § 9.2. Although this definition of victim is similar to that of the MVRA, the remission regulations go one step further in allowing "related offense[s]" to be compensated. 28 C.F.R. § 9.8(b)(1); *see also* Gov. Letter at 5, ECF No. 73, Dec. 22, 2017 ("Notably, remission is not only available to compensate for losses caused by the criminal offense of conviction, but also extends to losses caused by related offenses.").

The remission process is carried out by the Criminal Division of the Department of Justice—the "authority to grant remission and mitigation is delegated to the Chief, Asset Forfeiture and Money Laundering Section." 28 C.F.R. § 9.1(b)(2). A petition for remission must contain:

> (i) The name, address, and social security or other taxpayer identification number of the person claiming an interest in the seized property who is seeking remission or mitigation;
> (ii) The name of the seizing agency, the asset identifier number, and the date and place of seizure;
> (iii) The district court docket number;
> (iv) A complete description of the property, including the address or legal description of real property, and make, model, and serial numbers of personal property, if any; and

(v) A description of the petitioner's interest in the property as owner, lienholder, or otherwise, supported by original or certified bills of sale, contracts, mortgages, deeds, or other documentary evidence.

28 C.F.R. § 9.4(c)(1).

After a remission application is received, the agency that seized property from the defendant must investigate the petition and submit a report to the United States Attorney. *Id.* § 9.4(f). "Upon receipt of the agency's report and recommendation, the U.S. Attorney shall forward to the Chief, Asset Forfeiture and Money Laundering Section, the petition, the seizing agency's report and recommendation, and the U.S. Attorney's recommendation on whether the petition should be granted or denied." *Id.*

There is an internal appeals process for a claimant should an application be denied. *Id.* § 9.4(k). The claimant's appeal, if taken, is decided by a different official within the Department of Justice. *Id.*

## IV. Application of Law to the Facts

### A. Victims Under the MVRA

As Congress made clear in the MVRA, not every person with a grievance against a defendant is entitled to criminal restitution. Only those "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered" may obtain restitution. 18 U.S.C. § 3663A(a)(2). The Court of Appeals for the Second Circuit has ruled that the direct and proximate cause analysis goes beyond looking simply at the elements of the crime, and instead focuses on whether the fraudulent conduct that harmed a defendant was an "integral part of the single scheme [the defendant] devised." *United States v. Archer*, 671 F.3d 149, 172 (2d Cir. 2011).

The defendant has been charged with bank fraud and has agreed to pay restitution to the banks. While the elements of Bank Fraud are not dispositive, it is a useful starting point in assessing the charged crime and conduct. The statute provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice--

**(1)** *to defraud a financial institution*; or

**(2)** to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a *financial institution*, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C.A. § 1344 (emphasis added). The focus of this statute is on a person's conduct as it relates to a financial institution.

The conduct for which the defendant was charged and pled guilty was that he misrepresented ownership interests to obtain loans from banks and then misappropriated the funds. This was not a blanket indictment of all Dharia's business practices.

After investigating, the government has represented to the court that one of the PRP Entities, "PRP Neptune Beach, LLC was *not* an investor in any of the properties associated with the counts of the conviction in this case, meaning that it did not invest in the three Houlihan's properties for which Dharia fraudulently obtained SBA loans from PNC Bank or the five hotels for which Dharia fraudulently obtained SBA loans from Fidelity Bank of Florida." Gov. Letter at 5, ECF No. 69, Dec. 18, 2017. The harm claimed by Vison One and Shailendra Bhawnani also "was not among those that served as a basis for either of the two bank fraud schemes, which involved three Houlihan's franchises and five other hotels, as charged in the information." *Id.* It has not been established that PRP Brooklyn Eatery, LLC's claim has a basis in one of the defendant's charged fraudulent schemes.

15

Claims by Vison One, Shailendra Bhawnani, and PRP Neptune Beach, LLC fail. One cannot be an integral part of the scheme if it is not part of the scheme. PRP Brooklyn Eatery, LLC's claim also lacks a basis in the charged conduct. The defendant was charged with concealing information from a bank. As explained below, these claims are dismissed on another basis as well.

Both groups of claimants rely on case law standing for the proposition that an individual need not be named in a criminal indictment in order to be entitled to restitution. *See, e.g., United States v. Kanan*, 387 F. App'x 120 (2d Cir. 2011); *U.S. v. Battista*, 575 F.3d 226 (2d Cir. 2009). This principle, while true, is inapposite.

*Kanan* is an unpublished order, which reviewed a district court's decision on a plain error standard. The case upheld an award of restitution to state taxing authorities when the defendant made false statements in a tax return during a bank fraud scheme. The court held that "[i]t is far from 'clear' or 'obvious' [] that filing false tax returns with the state with the result that illegally obtained checks are deposited in a fake account with a financial institution is not part of the implementation of a scheme of bank fraud." *Id.* at 123.

A bank fraud scheme—even if broadly viewed—must have some limit. The government charged Dharia with two counts of bank fraud, one related to fraud on PNC Bank and the other on Fidelity Bank of Florida. Vison One, Shailendra Bhawnani, and PRP Neptune Beach, LLC were not harmed by *this* bank scheme, even if they were victims of some bank fraud scheme. The claimants have made no showing that, if the defendant caused them losses, their losses were in any way related to the charged offense conduct with respect to specified banks.

Not all losses are entitled to criminal restitution; the inquiry is "whether [the] losses were caused by [the] offense of conviction." *Archer*, 671 F.3d at 170. Without a nexus to the criminally charged schemes, these claimants have no entitlement to restitution.

### B. Complexity and Burden

By seeking to intervene in the instant sentencing process, the PRP Entities have placed an unnecessary strain on the government, the defendant, and the court. The mandatory restitution scheme does not apply when "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim *is outweighed by the burden on the sentencing process*." 18 U.S.C.A. § 3663A (c)(3)(B) (emphasis added). Two particular aspects of the PRP Entities claim are notable: (1) the purported principle of the PRP Entities, Kesav Dama, may not have authority to direct this intervention process on the companies' behalf; and (2) the PRP Entities have moved to have the defendant's attorney removed as counsel in this case.

Kesav Dama claims to have received an interest in the PRP Entities when he became the guardian for a member of the partnership that formed the LLCs. *See* Gov. Letter at 4-5, ECF No. 69, Dec. 18, 2017. He submitted the operating agreement, which, the defendant notes, deprives any party who obtains an interest in the partnership by operation of law from taking part in the partnership's business. Mem. in Opp'n to Restitution at 9-11, ECF No. 71, Dec. 18, 2017. Dama responds that he still, under New York law, has the right to sue derivatively on behalf of the corporation. *See* Gov. Letter at 5, ECF No. 69, Dec. 18, 2017. The Government points out that Dama did not follow the necessary formalities to bring a suit derivatively. *Id.*

These representational issues do not seem to be settled. As the magistrate judge noted, "[t]he documents submitted by the PRP entities do not show on their face that Kesav Dama has

17

the legal authority to pursue claims on behalf of the PRP entities." Dec. 14, 2017 Order. The court should not be drawn into a difficult partnership dispute involving novel New York law that could require extensive additional fact discovery and briefing by the parties if the expanded restitution process continues.

The PRP Entities also filed a motion on December 14, 2017 claiming that Kesav Dama has an attorney-client relationship with the firm Moses & Singer, which represents the defendant in this criminal case. App. for Order to Show Cause to Remove Attorney, ECF No. 66, Ex. 1, Dec. 14, 2017. His claim is based on an April 4, 2016 email, as well as bills and an account statement from November 2017. *Id.* It is not clear why this claim is brought here, now. The defendant's attorney challenges the nature of his firm's attorney-client relationship with Kesav Dama, claiming that the representation did not relate to Dharia and that Dama was advised in April 2016 that Moses & Singer could not represent him in any matter related to Dharia. Mem. in Opp'n to Mot. to Remove Att'y, ECF. No. 72, Dec. 18, 2017.

Deciding this motion and removing the defendant's attorney would unduly complicate the sentencing process. Mr. Wolf has represented the defendant for several years. Removing him now would burden the defendant and deprive him of his counsel of choice. It would require the court to make difficult factual and legal findings regarding the scope of Moses & Singer's representation of Dama—facts that appear to be in dispute. If Dama has a claim against the law firm, it may lie in malpractice—not in a sentencing proceeding at this late hour. Victim restitution cannot be granted when it badly impedes the sentencing process.

The government argues that if the court were to accept Vison One and Shailendra Bhawnani's position on restitution entitlement, it "would require the investigation of upwards of fifty different properties, which would not be practicable for the government or the Court to

18

accomplish without seriously impeding the sentencing process." Gov. Letter at 6, ECF No. 69, Dec. 18, 2017. Consistent with the restitution statutory scheme, the court will not impose this burden on the government or the sentencing process.

### C. Prudential Considerations

As suggested by the ALI and MVRA's statutory scheme, the court takes account of pragmatic considerations. Vison One and Shailendra Bhawnani have already received a judgment against the defendant for the amounts they are now seeking in restitution. Restitution Hearing Transcript 14:6-19, Dec. 29, 2017 ("Restitution Hr'g Tr."). The PRP Entities began a civil proceeding against the defendant in 2009, which has been stayed. *Id.* 20:16-25.

The United States Probation Department undertook an extensive survey of the defendant's assets and concluded that his net worth is about $2.5 million. *See* Falgun Dharia Pre-Sentence Report ("PSR") at 30-40. The government has already collected approximately $3.24 million in funds from the defendant. *See* Gov. Letter at 3, ECF No. 73, Dec. 22, 2017. He has agreed to pay a total of over $11 million dollars in restitution for the instant convictions to the banks he defrauded. *See* Oct. 12, 2017 Hr'g Tr. He probably owes millions of dollars more to many individuals—his crimes and business dealings were far reaching. The defendant will probably be paying off his debts for the remainder of his life and will probably never fully satisfy them.

The government has represented that the money it collected can be distributed through the remission process. *See* Oct. 12, 2017 Hr'g Tr. 9:16-10:14; Restitution Hr'g Tr. 32:5-12.

The court could, theoretically, appoint a special master to distribute money to the restitution claimants. 18 U.S.C. § 3664(d)(6) ("[The court may] refer any issue arising in connection with a proposed order of restitution to a magistrate judge or special master for

19

proposed findings of fact and recommendations as to disposition, subject to a de novo determination of the issue by the court."). But the cost of this process would cut into the already insufficient funds of the defendant. It appears that the special master would only be able to provide funds to those who qualified as "victims" under the MVRA, which would not help most of the additional restitution claimants.

The government has already collected millions of dollars from the defendant and has a process in place for the distribution of these funds. *See supra* Part III(D). Remission allows for "related offense[s]" to be covered—the government is not bound to remit funds solely to those losses resulting from the "offense of conviction." *Compare* 28 C.F.R. § 9.8(b)(1), *with United States v. Archer*, 671 F.3d 149, 170 (2d Cir. 2011). The Remission and Mitigation process is an efficient alternative. It avoids delaying the defendant's sentencing for further court hearings, which in the end could only provide the claimants with permission to wait in line for funds.

## V. Conclusion

The restitution claims of Vison One, Shailendra Bhawnani, and the PRP Entities are dismissed for lack of any potential merit and based upon the complexity exception to the restitution scheme.

The motion to remove Dharia's attorney is denied.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: January 9, 2018
Brooklyn, New York

20